JOHN GROVES CO., INC.

*vs.*

BANGOR & AROOSTOOK RAILROAD COMPANY.

Aroostook.    July 10, 1925.

*When a carrier stipulates in the bill of lading, accepted by the shipper, of perishable goods shipped in lined or refrigerator cars heated by the shipper or in charge of a caretaker furnished by the shipper, that it will not be liable for. loss or damage of such goods, except in case of negligence, the shipper must, in case of loss by fire in one of a connecting carrier's yards, devoted solely to the classification of cars and the makeup of trains for transhipment, prove that the loss or damage was due to some neglect or lack of ordinary care on the part of the carrier or its connecting carrier.*

While a carrier is not required to furnish every possible means or the latest devices for extinguishing fires or provide a fully equipped crew or force for instant response in case of fire in one of its yards, ordinary care does require, where as in this case a large number of cars are assembled, loaded, it may be, with more or less inflammable material, within the more or less restricted area of a railroad yard, to furnish reasonably adequate protection to all shipments while in transit and standing in its yards against loss by fire from any hazard arising from such condition or from receiving into its yards cars heated by stoves temporarily installed as the car in this case was heated.

Its obligation in this respect, however, does not go so far as to require it to provide facilities or equipment, that would be adequate to protect against loss, shipments contained in and surrounded by the extra-hazardous conditions created by a car heated by a stove temporarily erected therein, though it would be bound to exercise reasonable care and diligence in the use of such equipment as it was bound to provide in protecting shipper's goods from loss by fire, even if the hazard was of the shipper's own creation, where, as in this case, it was with the consent and knowledge of the carrier.

In the case at bar, it is held that the defendant's connecting carrier did furnish reasonably adequate protection against all risks of its own creation within its yards; and, further, that it is obvious from the verdict that the jury must have misunderstood the obligation resting on the defendant's connecting carrier, since in no event could it be liable for the full value of the shipment, as some loss would necessarily result before the fire was discovered and could have been extinguished, however, complete the protection provided, and that their verdict, being for the full value of the shipment, was clearly the result of mistake or bias and furthermore, was not warranted by the evidence.

On motion for a new trial.   An action to recover damages for the loss of a car of potatoes destroyed by fire in Rigby yard of the Portland Terminal Company being en route from Perham to Vandemere, N. C., the car being furnished with lining, stove, and a caretaker. Plaintiff alleged negligence on the part of the Portland Terminal Company, a connecting carrier, in not providing suitable fire protection for cars loaded with potatoes necessarily in the yard en route to points of destination.   The jury returned a verdict of $725 for plaintiff and defendant filed a general motion for a new trial.   Motion sustained.   New trial granted.

The case fully appears in the opinion.

*Ransford W. Shaw,* for plaintiff.

*Henry J. Hart, Frank P. Ayer, James C. Madigan, and Cook, Hutchinson & Pierce,* for defendant.

SITTING:   WILSON, C. J., PHILBROOK, MORRILL, DEASY, BARNES, BASSETT, JJ.

WILSON, C. J.   An action to recover damages for the loss by fire of a carload of potatoes in the yard of a connecting carrier, the Portland Terminal Co., at South Portland in this State.

The bill of lading, issued to and accepted by the plaintiff, stipulated in substance that, in case of shipments of a perishable nature in lined or refrigerator cars and heated by the shipper, or in charge of a caretaker furnished by the shipper, the defendant or a connecting carrier would not be liable for the loss of or damage to such shipments, unless such loss or damage was due to the negligence of the defendant or a connecting carrier.

It is admitted that the potatoes in this case were shipped in a lined car, were in charge of a caretaker furnished by the plaintiff and that the car was heated by the plaintiff, and, therefore, it must show negligence on the part of the defendant or a connecting carrier in order to recover.

The plaintiff contended at *nisi prius* that the Portland Terminal Co., failed to furnish adequate fire protection for the plaintiff's shipment while standing in its yard set apart for receiving, shifting, and classifying freight cars, and the making up of trains for transhipment, and did not exercise due diligence in using such equipment as it did furnish; and as a result of its neglect in these particulars, the plaintiff's shipment was destroyed by fire.

The defendant contended that a carrier is under no duty to furnish any protection in its yards against loss of shipments while in transit by fire or at least only against such risks as were of its own creation and that its equipment for extinguishing fires was reasonably adequate to meet its obligations in this respect; and that it exercised due diligence under the circumstances shown to exist in this case in the use of the equipment it provided.

Upon these issues the case was submitted to a jury under, as we must assume, appropriate instructions, which awarded the plaintiff the sum of seven hundred and twenty-five dollars, which, according to the allegations in the plaintiff's declaration and the evidence, was the full value of the shipment. The case is before this court on a general motion for a new trial on the usual grounds.

While this court does not go so far, as urged by the defendant, as to hold that no obligation rests upon a common carrier to provide any protection against loss by fire to shipments in transit while standing in its yards awaiting transhipment over other and connecting lines, especially yards of the size of that of the Portland Terminal Co.; on the other hand, neither does it hold that a common carrier, relieved by its contract with the shipper of exercising other than ordinary or reasonable care, is required to furnish every possible means, or the latest devices for extinguishing fires, or provide a fully equipped force for instant response in case of fire.

However, by reason of its assembling so many cars, loaded, it may be, with more or less inflammable material, and so much valuable property within the limits or the more or less restricted area of a railroad yard and holding it there for longer or shorter periods for its own convenience, as well as for the benefit of the shipper in fulfilling its general obligation to forward all shipments without unreasonable delay, ordinary care requires a carrier to furnish reasonably adequate protection to all shipments while in transit and standing in its yard against loss by fire from any hazard arising from such conditions or from receiving into its yard cars, heated as the car containing the plaintiff's shipment was heated; and while it is not required to provide equipment that would be adequate to protect against loss, shipments contained in and surrounded by the extra-hazardous conditions created by a car heated by a stove temporarily erected therein, it would be bound to exercise reasonable care and diligence in the use of such equipment as it was bound to provide

in protecting a shipper's goods from destruction by fire, though the hazard was of the shipper's voluntary creation, it being with the carrier's consent.

. It is clear that the jury must have failed to appreciate the limits of the obligations imposed upon the defendant and its connecting carrier by its contract of shipment. Upon no basis, under its bill of lading, could the defendant have been liable for the full value of the plaintiff's shipment. It is not claimed that the defendant was in any way responsible for the fire or in any way liable, except for failure to furnish adequate equipment and exercise due diligence in its use. It could only be liable, if it was found that the connecting carrier was negligent in not providing reasonably adequate equipment or not exercising due diligence in its use, for such part of the shipment, if any, as might have been saved after the fire was discovered, if reasonably adequate protection had been furnished and due diligence exercised in its use. Some loss to such a shipment was inevitable under the conditions existing on the night of this fire, with a high wind blowing, after the fire had gained so much headway before it was discovered.

Furthermore, this court is of the opinion from the undisputed testimony that the Portland Terminal Co., had provided reasonably adequate protection to all property within its yard against all risks of its own creation and used on this occasion proper effort and due diligence, commensurate with the safety of the large amount of other valuable property in its care and exposed to the same danger, to save the plaintiff's shipment after the fire was discovered.

It appears that there were located within its yard five or six hydrants on the same water supply as the fire service of the cities of Portland and South Portland, and at one entrance to the yard was one of the public hydrants of the city of South Portland. It is true that all but one of the Portland Terminal Company's hydrants was in what is termed the east yard, with only one in the west yard so-called, in which the plaintiff's car was located; but east and west yards are only terms to designate the part of an entire yard lying east of the main or through traffic tracks and that part lying on the west; and that adequate fire hose was kept within the yard to reach all parts, whether lying easterly or westerly of the main tracks, from the hydrants thus located, traffic on the through tracks being held up by the usual danger signals, whenever, as in this case, it was necessary to lay the hose across the main tracks.

Chemical fire extinguishers were also kept on hand in the yard, and one was located within two or three hundred feet of the location of the car when the fire was discovered, and the nearest hydrant was only four hundred feet away.

It further appears that immediately upon the discovery of the fire, the man in charge of the yard was notified by telephone, who ordered the fire hose out, and telephoned the fire department of the city of South Portland; a train crew at once proceeded to uncouple the car on fire from the train with which it was connected and remove the others from the source of danger; within a few minutes a chemical extinguisher was brought and a hose connected with the nearest hydrant and water turned on the burning car, but with the high wind blowing, the fire had gained too much headway for use of the chemical, and only the platform of the car was saved by the use of the hose.

To require a carrier under the burden only of ordinary care to keep chemical extinguishers in such numbers in its yards as to have one available on the instant a fire was discovered in cars in transit while standing in its yards, or a fire company on duty at all times with hose in readiness to meet every emergency, or to always arrange cars and trains so that access to its hydrants would be entirely unobstructed would obviously be unreasonable.

From the evidence in the case at bar this court is of the opinion that the jury must have misunderstood the obligation resting upon the connecting carrier with respect to furnishing fire protection, as the amount of their verdict clearly shows, and that their verdict was clearly the result of mistake or bias.

The entry must, therefore, be:

*Motion sustained.*
*New trial granted.*